IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
COLUMBUS DIVISION

| | | |
|---|---|---|
| YHB MANAGEMENT CORP., | : | |
| | : | |
| Plaintiff, | : | Civil Action No.: |
| | : | _____ |
| v. | : | |
| | : | |
| FOUNTAIN BLEAU CAPITAL, LLC | : | |
| and TETON MANAGEMENT CORP., | : | |
| | : | |
| Defendants. | : | |

COMPLAINT FOR DAMAGES

COMES NOW YHB Management Corp., and, through counsel, hereby files its Complaint for Damages, respectfully showing the Court the following:

PARTIES, JURISDICTION, AND VENUE

1.

Plaintiff YHB Management Corp. ("YHB") is a New Jersey corporation with a principal place of business located at 151 Miller Road, Lakewood, New Jersey 08701.

2.

Defendant Fountain Bleau Capital, LLC ("Fountain Bleau") is a New York limited liability company that maintains a principal place of business located at P.O. Box 2862, Pittsfield, Massachusetts 01202. YHB may be served with process

1

upon its registered agent for service of process: George C. Whaling, 34 Depot Street, Suite 301, Pittsfield, Massachusetts 01201.

3.

Fountain Bleau is subject to the jurisdiction of this Court.

4.

Defendant Teton Management Corporation ("Teton") is a Massachusetts corporation with a principal place of business located at 103 Hawthorne Avenue, 2nd Floor, Pittsfield, Massachusetts 01201. Teton may be served with process upon its registered agent for service of process: George C. Whaling, 34 Depot Street, Suite 301, Pittsfield, Massachusetts 01201.

5.

Teton is subject to the jurisdiction of this Court.

6.

This is an action between corporate citizens of different states.

7.

The amount in controversy in this action exceeds the sum of $75,000.00, exclusive of interest and costs.

8.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

9.

Venue in this judicial district is proper in that a substantial part of the events or omissions giving rise to the claims herein occurred in the Middle District of Georgia, and the property that is subject to this action is located in the Middle District of Georgia.

**FACTS**

10.

On or about July 8, 2021, Fountain Bleau, Teton, and YHB entered into a contract for purchase and sale (the "Contract") of property known as 6023 Crystal Drive, Columbus, Georgia 31907, a property otherwise known as the Seabreeze Mobile Home Park ("the Seabreeze Property"). A true and correct copy of the Contract is attached hereto as Exhibit "1" and incorporated by reference.

11.

Th purchase price for the Seabreeze Property was Twelve Million Eight Hundred Fifteen Thousand and 00/100 Dollars ($12,815,000.00).

12.

YHB paid an Earnest Money deposit of One Hundred Fifty Thousand and 00/100 Dollars ($150,000.00) as required by the Contract.

13.

Fountain Bleu was identified as the Seller in the Contract and made numerous representations and warranties in the Contract.

14.

Teton was identified as the Backstop Party in the Contract and is bound by all representations and warranties made by Fountain Bleau.

15.

In Section 7(b) of the Contract, Fountain Bleau and Teton expressly made the following representations and warranties, among others:

> viii. Seller has no information or actual knowledge of any significantly adverse facts or conditions related to the Property or its present use which have not been specifically disclosed in writing by Seller to Buyer, and Seller has no actual knowledge of any fact or condition of any kid or character which materially affects the present value of the Property including, but not limited to, water, sewer or other infrastructure deficiencies or damage located on or affecting the Property.
>
> . . .
>
> x.   Seller, to the best of its knowledge, has not used Hazardous Materials on, from, or affecting the Property, or any portion thereof, in any manner which violates federal, state, or local laws, ordinances, rules, regulations, or policies governing the use, storage, treatment, transportation, manufacture, refinement, handling, production, or disposal of Hazardous Materials, and, to Seller's knowledge, no prior owner, tenant, subtenant occupant, prior subtenant, or prior occupant has used Hazardous Materials on, from or affecting the Property, or any portion thereof, in any way which violates federal state or local laws, ordinances, rules, regulations, or policies governing the use,

storage, treatment, transportation, manufacture, refinement, handling, production or storage of hazardous materials…

. . .

xiii.   To the best of Seller's knowledge, all statements made by Seller in this Contract are true and correct and the information provided and to be provided by Seller to Buyer related to this Contract does not and will not contain any statement which, at the time and in the light of the circumstances under which it was made, is false or misleading with respect to any material fact, or omits to state any material fact (which is known) necessary to make any statement false or misleading in any material respect.

16.

The Contract allowed YHB a forty-five day inspection period in which to inspect the Property prior to a closing on the Seabreeze Property.  That inspection period was later extended to September 7, 2021, by virtue of a First Amendment to Real Estate Purchase Agreement (the "Amendment") executed on or about July 28, 2021.  A true and correct copy of the Amendment is attached hereto as Exhibit "2" and incorporated herein by reference.

17.

After entering into the contract, YHB promptly began its due diligence during the inspection period.  YHB retained a number of vendors, including a company known as Due Diligence Partners, to inspect the Seabreeze Property and the amenities thereon.

18.

During the course of the inspections conducted by YHB and its agents, the following defects, among others, were discovered:

(a) Both the water and sewer lines on the Seabreeze Property were severely damaged, leaking and absorbing foreign substances. There was an extremely high risk that water lines were taking on sewage from the sewer lines, thereby potentially exposing residents to drinking their own sewage.

(b) The sewer lines on the Seabreeze Property contained uncovered manholes, open lines, and broken lines, and raw sewage was seeping into the ground as well as draining into nearby waterways.

(c) The water and sewer lines on the Seabreeze Property were buried less than one inch underground in certain areas, and in others, they were completely exposed.

(d) There were open cleanouts and taps and some of them had trees growing out of them.

(e) Jetting or cleaning the sewer lines would completely destroy the lines.

19.

Fountain Bleau and Teton had actual knowledge of all of the water and sewer problems with the Seabreeze Property prior to entering into the Contract.

20.

YHB and its agents were advised that a complete rebuild of the sewer lines on the Seabreeze Property was necessary, and that the cost for such a rebuild might exceed One Million Dollars ($1,000,000.00).

21.

Paragraph 18(a) of the Contract provides:

If Seller fails to perform its obligations or covenants under this Contract or if any of Seller's warranties or representations set forth herein are inaccurate, Buyer may, at Buyer's option, (a) enforce specific performance of this Contract and seek damages for Seller's breach, or (b) Buyer may terminate the Contract, in which case the entirety of the Earnest Money ($150,000.00) shall be forthwith returned to Buyer, Buyer's third party reports shall be reimbursed by Seller, and Buyer's due diligence costs (the "Due Diligence Costs") shall be reimbursed by Seller with said Due Diligence Costs reimbursement to be capped at $200,000, and if all of the foregoing are not paid to Buyer this shall become a lien and cloud on the Property. Seller shall not be considered in default hereunder unless Seller has received written notice of the claimed default and failed to cure the default within five (5) days after receiving such notice.

22.

On or about August 17, 2021, YHB provided Fountain Bleau and Teton with notice of default and termination of the Contract, in accordance with the provisions of the Contract.

23.

On or about August 25, 2021, Fountain Bleau and Teton accepted YHB's notice of default and termination of the Contract, and returned the Earnest Money of One Hundred Fifty Thousand Dollars ($150,000.00) to YHB.

24.

At the time it accepted YHB's notice of default and termination of the Contract, neither Fountain Bleau nor Teton returned or offered to return any of YHB's due diligence costs.

25.

In accordance with paragraph 18(a) of the Contract, Fountain Bleu and Teton have received written notice of their default under the Contract and, by this Complaint, are further notified of their default under the Contract.

26.

YHB has performed all conditions precedent necessary to bring the claims asserted herein.

### **COUNT ONE – BREACH OF CONTRACT**

27.

Paragraphs 1 through 26 are incorporated herein by reference.

28.

YHB, Fountain Bleau, and Teton entered into a valid and binding Contract for the purchase and sale of the Seabreeze Property.

29.

Fountain Bleau and Teton breached the Contract by, among other things, making materially false and misleading representations and warranties in paragraph 7(b) of the Contract.

30.

At the time Fountain Bleau and Teton made their representations and warranties in the Contract, they knew they were materially false and misleading.

31.

Fountain Bleau and Teton materially breached the Contract.

32.

As a direct and proximate result of Fountain Bleau's and Teton's breach of contract, YHB has suffered damages in excess of $75,0000, to include due diligence costs, attorney's fees, and expenses.

33.

Fountain Bleau and Teton are liable to YHB for damages for breach of contract in an amount to be determined at trial.

### **COUNT TWO – ATTORNEY'S FEES AND EXPENSES**

34.

Paragraphs 1 through 33 are incorporated herein by reference.

35.

Paragraph 18(b) of the Contract provides that "[s]hould either party employ an attorney or attorneys to enforce any of the provisions of this Contract or to protect its interest in any matter arising under this Contract or to recover damages for breach of Contract, if such party prevails in any final judgment, such party shall be entitled to recover from the non-prevailing party all reasonable costs, charges and expenses, including attorney's fees, expended or incurred in connection therewith."

36.

YHB has been forced to employ counsel to protect its rights under the Contract.

37.

Fountain Bleau and Teton are liable to YHB for attorney's fees and expenses in an amount to be determined at trial.

WHEREFORE, YHB respectfully requests the following relief:

(a)     That summons and process issue as provided by law;

(b)     That the Court enter judgment in favor of YHB on Count 1 of this Complaint for breach of contract;

(c)     That the Court enter judgment in favor of YHB on Count 2 of this Complaint for attorney's fees and expenses; and

(d) That the Court grant such further relief as deemed just and appropriate.

Respectfully submitted, this 5th day of November, 2021.

                                  PAGE, SCRANTOM, SPROUSE, TUCKER
                                  & FORD, P.C.:

                    By:  /s/ Tyler C. Cashbaugh
                                Alan G. Snipes
                                Ga. Bar No.: 665781
                                Tyler C. Cashbaugh
                                Ga. Bar No.: 869622

                                Attorneys for Plaintiff

1111 Bay Avenue
Post Office Box 1199
Columbus, Georgia 31902-1199
(706) 243-5636
ags@psstf.com
tcc@psstf.com